**Electronically Filed
Intermediate Court of Appeals
29789
12-NOV-2013
09:18 AM**

NO. 29789

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


HELEN L. GABRIEL, Claimant-Appellant,
v.
COUNTY OF HAWAI'I, DEPARTMENT OF PARKS & RECREATION,
Employer-Appellee, Self-Insured,
and
CLAIMS MANAGEMENT, INC.,
Third-Party Administrator-Appellee


APPEAL FROM THE LABOR & INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2006-163(H)(1-03-00489))


MEMORANDUM OPINION
(By: Nakamura, C.J., Leonard and Reifurth, JJ.)

Defendant-Appellant Helen L. Gabriel ("Gabriel")
appeals from the March 24, 2009 Decision and Order entered by the
Hawai'i Labor and Industrial Relations Appeals Board ("LIRAB").
The order, in relevant part, affirmed the Director of the
Department of Labor and Industrial Relations' ("Director")
September 14, 2006 Decision and Order that (1) denied Gabriel
additional temporary total disability ("TTD") benefits relating
to a May 22, 2003 work injury ("2003 Injury") beyond January 9,
2006; and (2) determined that Gabriel's former employer, the
County of Hawai'i, Department of Parks & Recreation ("Employer"),
was entitled to credit the TTD payments it paid to Gabriel
between January 10 and March 5, 2006, against a prospective award
of permanent partial disability benefits.

For the reasons discussed below, we vacate the LIRAB's
March 24, 2009 Decision and Order and remand for further
proceedings.

I.   POINTS OF ERROR

On appeal, Gabriel contends that the LIRAB erred by (1) declining to admit into evidence, due to untimely filings, both the testimony of physician Scott McCaffrey ("Dr. McCaffrey") and his medical report dated September 26, 2007 ("Dr. McCaffrey's 2007 Report"); (2) finding that Dr. McCaffrey, in an earlier report ("Dr. McCaffrey's 2006 Report"), had not attributed her disability to the 2003 Injury; and (3) crediting Employer with three months of TTD payments made to Gabriel between January 10 and March 6, 2006, against Employer's liability for prospective benefits.

II.   BACKGROUND

On May 22, 2003, Gabriel, while working for Employer as a park caretaker, sustained injuries to her lower back and left leg as a result of lifting and using a pressure washer.  Employer accepted liability for those injuries.

Thereafter, Gabriel received treatment and diagnoses from several physicians regarding pain and other symptoms manifesting in her back and leg.  In addition to the specific injury, Gabriel was diagnosed with various conditions unrelated to the injury.  The physicians eventually deemed Gabriel fit for light duty work.

On October 24, 2005, at Employer's request, the Director ordered Gabriel to attend a psychological evaluation with psychologist Joseph Rogers ("Dr. Rogers").  Dr. Rogers met with Gabriel, compiled a comprehensive report of Gabriel's prior medical treatment and diagnoses, and clinically diagnosed her with Pain Disorder Associated with Psychological Factors.  Dr. Rogers opined that while Gabriel suffered psychological factors that "represent[ed] issues of poor motivation and disincentives to her recovery and return to work," she did not have any psychiatric/psychological work limitations or restrictions.

After a hearing on November 10, 2005 to address treatment issues, the Director issued the January 31, 2006

Decision and Order[1] providing for medical and TTD benefits covering, for the most part, the period from May 31, 2003, through November 10, 2005. The January 31, 2006 Decision and Order also provided that further TTD benefits were to be made "contingent upon proper certification of disability."

On February 21, 2006, Employer notified Gabriel that it intended to terminate TTD benefits effective March 7, 2006, and would deem any TTD payments made after January 10, 2006, to be a credit against any future compensation. On March 13, 2006, Gabriel moved to remand her case to the Director for an emergency hearing regarding the termination of TTD benefits, arguing that Employer had not provided medical evidence of her ability to return to work. Employer stipulated, along with Gabriel, to the temporary remand, which was granted by the LIRAB on April 18, 2006.

On July 25, 2006, the Director held a hearing ("July 2006 Hearing") to address the termination of TTD benefits. While Gabriel cited various factors, including conflicts with co-workers and chronic pain stemming from the 2003 Injury, Employer cited reports from three different physicians and Dr. Rogers, each attesting to Gabriel's ability to return to work.

On August 10, 2006, before the Director rendered a decision related to the July 2006 Hearing, Gabriel visited Dr. McCaffrey. Based on his examination, Dr. McCaffrey reported:

> Ms. Gabriella [sic] has suffered a significant and severe lumbosacral and thoracic injury on the above date. Her exam is consistent with compression fracture and/or disc derangement of the mid-thoracic region. Likewise, she appears to have suffered a significant structural injury to the lumbar region with chronic, persistent pain, muscle spasm, and severe and dramatic range of motion loss.

Dr. McCaffrey made specific recommendations for further evaluation and care. He declared Gabriel's work status as "Off duty effective 3/15/06." Gabriel sought to change her primary care physician to Dr. McCaffrey, but Employer denied this request on multiple grounds. Gabriel did not pursue relief from Employer's denial.

---

[1] A clerical error in the January 31, 2006 Decision and Order was corrected by an amended decision and order that was issued on February 10, 2006.

On September 14, 2006, the Director issued a Decision and Order regarding the July 2006 Hearing. The Director found that Employer properly terminated benefits effective March 7, 2006, and that Employer was entitled to a credit for TTD benefits paid to Gabriel between January 10 and March 6, 2006. The Director transmitted the case back to the LIRAB for determination of all issues on appeal. Gabriel appealed to LIRAB from the September 14, 2006 Decision and Order.

The LIRAB scheduled an initial conference regarding the appeal for November 16, 2006. In response, both Gabriel and Employer submitted their initial conference statements; Gabriel's designated witnesses, therein, included Dr. McCaffrey.

On November 22, 2006, the LIRAB issued a Pretrial Order which identified the issues to be determined as:

a. Whether [Gabriel] is entitled to further physical therapy.

b. Whether [Gabriel] is entitled to [TTD] benefits after January 9, 2006, as a result of the work injury of May 22, 2003.

c. Whether Employer is entitled to credit [TTD] benefits paid from January 10, 2006 to March 6, 2006 against the award for permanent partial disability benefits.

The Pretrial Order also scheduled trial for October 8, 2007, and set August 13, 2007, as the discovery deadline for both live witness identification and medical reports submissions.

On July 25, 2007, Employer's live witness identification list, which included Dr. McCaffrey, was filed. On August 13, 2007, a July 23, 2007 medical report from physician Bruce Hector ("Dr. Hector") that was also submitted by Employer, was filed. Dr. Hector's report reviewed Gabriel's medical records dating from the date of the accident. He discounted Dr. McCaffrey's report and recommendations for various reasons, including inconsistencies with, and the lack of any review of, Gabriel's prior medical records. Dr. Hector concluded that Gabriel's condition and any further recommended care was not attributable to her 2003 Injury.

On August 20, 2007, Gabriel's live witness identification list ("Witness List"), in which she identified herself, Dr. McCaffrey, and two other witnesses, was filed. Her

4

submission was by letter to the LIRAB, dated August 13, 2007; it does not indicate that a copy was sent to Employer. Gabriel did not seek leave to submit her Witness List beyond the discovery deadline.

Gabriel, due to a conflict on counsel's calendar, moved to have the October 8, 2007 hearing date continued to November 2, 2007. On September 26, 2007, the LIRAB, via its First Amended Pretrial Order, reset trial for November 2, 2007, and stated that "all discovery deadlines shall remain as previously identified."

On October 1, 2007, a letter, purporting to be a motion in limine in which Gabriel sought leave to allow a September 26, 2007 medical report from Dr. McCaffrey to be admitted into evidence, was filed. Gabriel argued therein that the report was critical to her case because it provided objective evidence of her condition.

The LIRAB scheduled a hearing on Gabriel's motion for October 25, 2007. Employer objected to both the form and substance of her letter. The record does not reveal whether the LIRAB ever ruled on the motion.

On October 30, 2007, Gabriel moved to continue trial on grounds that the results of an orthopedic consultation that she had would not be available prior to the scheduled November 2, 2007 trial date. Gabriel argued that the results may be critical to her appeal, and suggested that the LIRAB should order the continuance to "prevent manifest injustice." Employer objected to the motion as a "ruse" to submit medical reports beyond the discovery deadline and as lacking any showing that the evaluation and a related diagnostic report could not have been performed within the discovery time frame. On November 21, 2007, the LIRAB granted the requested continuance, and issued its Second Amended Pretrial Order, rescheduling trial to February 1, 2008, and again stating that "all discovery deadlines shall remain as previously identified."

On January 28, 2008, Gabriel submitted an amended exhibit list, which included Dr. McCaffrey's 2006 and 2007 Reports. On January 30, 2008, Employer submitted its motion to strike ("January 2008 Motion to Strike"), arguing that Dr.

McCaffrey's 2007 Report should be excluded as untimely submitted and that Dr. McCaffrey's testimony was irrelevant until such time as Gabriel addressed her entitlement to change her physician to Dr. McCaffrey.[2]

On January 30, 2008, after a status conference, the LIRAB issued a Third Amended Pretrial Order. It continued the trial to November 10, 2008, and reiterated that "all discovery deadlines shall remain as previously identified." It did not rule on Employer's January 2008 Motion to Strike.

On November 8, 2008, two days before the scheduled trial, Employer again moved to strike ("November 2008 Motion to Strike") Gabriel's untimely discovery submissions, including her Witness List and Dr. McCaffrey's 2007 Report. Employer asserted that it had never received a file-stamped copy of Gabriel's Witness List, and that it only learned on November 3, 2008, that it had been filed after the discovery deadline.[3] It therefore sought to exclude all witnesses identified therein. Employer also sought to exclude all medical records submitted after the August 13, 2007 discovery deadline. In addition to untimeliness, Employer sought to strike Dr. McCaffrey's reports on grounds that he was not authorized to provide services.

On November 10, 2008, the LIRAB held a hearing on Employer's November 2008 Motion to Strike. After hearing argument, the LIRAB barred Dr. McCaffrey from testifying and excluded all medical reports generated and submitted after the discovery deadline, despite having acknowledged that surprise was not an issue. On November 14, 2008 it issued an order striking Dr. McCaffrey's 2007 Report from the record.

On March 24, 2009, the LIRAB issued the Decision and Order determining that 1) Gabriel's request for additional physical therapy was denied on technical grounds for noncompliance with statutory requirements, but that she may still

---

[2] It appears that Gabriel proceeded as if Dr. McCaffrey was her treating physician, despite the Employer's denial of her election to change to Dr. McCaffrey, which Gabriel did not challenge before the LIRAB. See generally HAW. REV. STAT. § 386-21(b); Haw. Admin. R. § 12-15-38.

[3] Employer does not address whether it had previously received a non-file-stamped copy.

be entitled to such; 2) Gabriel was not entitled to receive TTD benefits after January 9, 2006, for want of proper medical certification;[4] and 3) that Employer was entitled to credits for payments issued after that date.

Gabriel timely appealed.

III.  STANDARDS OF REVIEW

Appellate review of a LIRAB decision is governed by Hawaii Revised Statutes § 91-14(g) (1993), which states that:

> Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
> (1)  In violation of constitutional or statutory provisions; or
> (2)  In excess of the statutory authority or jurisdiction of the agency; or
> (3)  Made upon unlawful procedure; or
> (4)  Affected by other error of law; or
> (5)  Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> (6)  Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HAW. REV. STAT. §91-14(g).

We have previously stated:

> [Findings of Fact ("FOF")] are reviewable under the clearly erroneous standard to determine if the agency decision was clearly erroneous in view of

---

[4]     The LIRAB's Findings of Fact ("FOF") #16 and #17 stated:

(16) Although Dr. McCaffrey, an occupational medicine specialist, examined [Gabriel] on August 16, 2006, and opined in a report of the same date that [Gabriel] was off[-]duty effective March 15, 2006, Dr. McCaffrey did not attribute [Gabriel's] disability from work to her May 22, 2003 work injury.  Dr. McCaffrey's August 16, 2006 certification retroactively certified disability to March 15, 2006, but Dr. McCaffrey was not treating [Gabriel] on March 15, 2006.  There is, therefore, no proper medical certification in the record on appeal that [Gabriel] was disabled due to her work injury after January 9, 2006.  *See, Pacheco v. State of Hawaii, Department of Health*, AB 2000-291(H) (May 16, 2002).

(17) The [LIRAB] finds that, based on Dr. Direnfeld's March 3, 2005 and May 12, 2006 reports, Dr. Rogers' January 10, 2006 report, all of which the [LIRAB] credits, and the lack of proper and contemporaneous medical certification of disability, [Gabriel] was not entitled to TTD benefits after January 9, 2006.

7

> reliable, probative, and substantial evidence on the whole record.
>
> [Conclusions of Law ("COL")] are freely reviewable to determine if the agency's decision was in violation of constitutional or statutory provisions, in excess of statutory authority or jurisdiction of agency, or affected by other error of law.
>
> A COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case. When mixed questions of law and fact are presented, an appellate court must give deference to the agency's expertise and experience in the particular field. The court should not substitute its own judgment for that of the agency.

*Igawa v. Koa House Rest.*, 97 Hawaiʻi 402, 406, 38 P.3d 570, 574 (2001) (internal quotation marks, citations, and brackets in original omitted) (quoting *In re Water Use Permit Applications*, 94 Hawaiʻi 97, 119, 9 P.3d 409, 431 (2000)).

> An FOF or a mixed determination of law and fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made. We have defined "substantial evidence" as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

*In re Water Use Permit Applications*, 94 Hawaiʻi at 119, 9 P.3d at 431 (some internal quotation marks and citations omitted).

IV.  DISCUSSION

A.  The LIRAB's decision to exclude Dr. McCaffrey's testimony was an abuse of discretion.

Gabriel contends that, despite her untimely filings, the LIRAB abused its discretion[5] in excluding Dr. McCaffrey's testimony and 2007 Report. She argues that because (1) Dr. McCaffrey's testimony and report were critical to correlating her condition to her 2003 Injury, and (2) as the hearing did not take place until November 2008, Employer could not have been prejudiced by her untimely filings. It was, therefore, an abuse

---

[5]     Employer's arguments appear premised on the "clearly erroneous" standard of review. However, where an agency exercises discretion, its determination is reviewed for abuse of discretion. H AW. REV. STAT. § 91-14(6); *cf. Ek v. Boggs*, 102 Hawaiʻi 289, 299, 75 P.3d 1180, 1190 (2003) (discovery sanctions reviewed for abuse of discretion).

of discretion "to prevent a fair hearing where there was no possibility of prejudice to the other side."

Chapter 47 ("LIRAB Rules") of title 12 of Hawai'i's Administrative Rules ("HAR") governs LIRAB proceedings. *See* Haw. Admin. R. § 12-47-1. HAR § 12-47-22 provides that the LIRAB "may enter a pretrial order," establishing, in part, discovery deadlines, and "may impose administrative sanctions as described in section 12-47-48 for noncompliance with the board's order." HAR § 12-47-48 provides:

> Sanctions for contemptuous conduct.
>
> (a) Any person whose conduct at any proceeding before the board or before a member is deemed contemptuous by the presiding member, or who has refused to comply with an order of the board, has refused to adhere to reasonable standards of orderly and ethical conduct, has failed to act in good faith, or has engaged in the continued use of dilatory tactics, may be excluded from the proceeding. The board may impose other sanctions, including dismissal of the appeal.
>
> (b) If a witness refuses to answer any question which has been ruled to be proper, the presiding member may strike all testimony previously given by the witness on related matters.

Haw. Admin. R. § 12-47-48. Additionally, the LIRAB has wide discretion to control the admission or exclusion of evidence.

> The [LIRAB] shall not be bound by statutory and common law rules relating to the admission or rejection of evidence. The [LIRAB] may exercise its own discretion in these matters, limited only by considerations of relevancy, materiality, and repetition, by the rules of privilege recognized by law, and with a view to securing a just, speedy, and inexpensive determination of the proceedings.

Haw. Admin. R. § 12-47-41; *see also Sugano v. Dep't of Atty. Gen.*, No. 29246, 2010 WL 231100, at *3 (Haw. Ct. App. Jan. 22, 2010) (SDO) (holding that LIRAB's decision to admit previously suppressed medical report into evidence was not an abuse of discretion). More generally, HAR § 12-47-1 provides that these rules "shall be construed to secure the just, speedy, and inexpensive determination of every proceeding." Haw. Admin. R. § 12-47-1.

It is within the LIRAB's discretion to exclude untimely discovery. *See Tautua v. BCI Coca-Cola Bottling Co. of Los Angeles*, No. 30291, 2012 WL 2308162, at *2 (Haw. Ct. App. June 18, 2012) (SDO) (affirming the LIRAB's exclusion of two medical reports generated after the agency hearing). That discretion,

however, is not limitless; both generally and as to evidentiary matters, equitable considerations apply. *See* Haw. Admin. R. § 12-47-1 (requiring that the LIRAB Rules be construed to secure a "*just*, speedy, and inexpensive determination" (emphasis added)); § 12-47-41 (directing that discretion in evidentiary matters be similarly guided). The LIRAB Rules also provide that pretrial orders are amendable where "manifest injustice" would otherwise result. Haw. Admin. R. § 12-47-22.

Sanctions for a discovery violation "must be commensurate with the offense." *See Weinberg v. Dickson-Weinberg*, 123 Hawai'i 68, 75, 229 P.3d 1133, 1140 (2010). "Accordingly, the imposition of a sanction . . . requires 'an analysis of the relevant facts and circumstances that resulted in the exercise of discretion.'" *Id.* at 76, 229 P.3d at 1141 (quoting *Maddox v. Stone*, 921 A.2d 912, 919 (Md. Ct. Spec. App. 2007)).

The fact that trial on the matter did not proceed as scheduled on October 8, 2007, but was continued, first, to November 2, 2007, and subsequently twice more to November 10, 2008, lessens the prejudice to the Employer from the belated disclosures, but does not compel us to find an abuse of discretion. Indeed, if courts, administrative bodies, and opposing parties were required to waive discovery deadlines as a condition of any agreement or decision to extend a hearing date, such extensions would likely be rarely granted. In this case, each of the extensions was at the request of Gabriel's counsel, and was explicitly conditioned upon maintenance of the August 13, 2007 discovery deadline.

The interest of a trial court or an administrative agency in controlling its calendar and the process by which it will address complaints and schedule proceedings is itself significant, but must be balanced against the rights and interests of proceeding participants. Here, Gabriel's Witness List, which included Dr. McCaffrey, and Dr. McCaffrey's 2007 Report were filed approximately one week and six weeks, respectively, beyond the applicable discovery deadline. Dr. McCaffrey's identity as a witness, however, had been disclosed in

both Gabriel's initial conference statement and the Employer's own Witness List. On the other hand, Dr. McCaffrey's 2007 Report, unlike his 2006 Report, was submitted only in the context of the September 28, 2007 letter from Gabriel's counsel asking that the letter be treated as a motion in limine to permit receipt of the report.

After hearing argument from both parties regarding Employer's Motion to Strike, the LIRAB explained its basis for excluding Dr. McCaffrey's testimony and his 2007 Report:

> The [LIRAB] rules that [Dr. McCaffrey] will not be allowed to testify in this matter because he was untimely identified as [a] live witness[]. Further, to make it clear as to . . . how we are ruling on the evidentiary matters, medical records obtained or generated after August 13, 2007, shall similarly be excluded from appeal.
>
> Now, I don't believe that that will preclude the parties from presenting evidence on the three points on appeal. Of course, I would expect the litigants to feel differently about that.

Upon consideration, we conclude that the LIRAB abused its discretion in excluding Dr. McCaffrey's testimony altogether. While Gabriel's Witness List was filed one week late, Dr. McCaffrey was listed as a witness on Gabriel's initial conference statement and on Employer's Witness List. Moreover, Dr. McCaffrey's 2006 Report was reviewed and addressed by Employer's experts. Under the circumstances, denying Dr. McCaffrey the opportunity to address the Employer's critique of his report effectively precluded Gabriel of what was arguably her only opportunity to present testimony that might have supported her claim. *Cf. Dudley v. Huizenga*, 667 N.W.2d 644, 650 (S.D. 2003) ("[T]he ALJ had authority to impose sanctions for failure to timely disclose; however, . . . den[ying] . . . a hearing on the merits . . . was too harsh and constituted an abuse of discretion.").

To the contrary, however, the LIRAB did not abuse its discretion in declining to permit introduction of Dr. McCaffrey's 2007 Report. The LIRAB reasonably established the August 13, 2007 discovery deadline, and consistently thereafter ruled that the deadline remained in force, irrespective of the extensions to the hearing date that it granted to Gabriel's counsel. Discovery deadlines exist for reasons beyond merely preventing prejudice,

*see* Haw. Admin. R. § 12-47-41, and the LIRAB's amenability to such extensions provides no basis to excuse untimeliness. Gabriel did not provide a reasonable explanation for her failure to obtain Dr. McCaffrey's 2007 Report before the discovery deadline. Dr. McCaffrey's 2007 Report was therefore plainly and inexcusably untimely. Gabriel has not established that the LIRAB abused it discretion in declining to permit its introduction. *See* Haw. Admin. R. §§ 12-47-41, -48.

B. Gabriel's second and third points of error.

In light of our decision to vacate the March 24, 2009 Decision and Order and to remand the case to the LIRAB, we need not address Gabriel's second or third points of error, which will necessarily be revisited on remand.

V. CONCLUSION

The LIRAB's March 24, 2009 Decision and Order is vacated and the case is remanded to the LIRAB for further proceedings not inconsistent with this opinion.

DATED: Honolulu, Hawai'i, November 12, 2013.

On the briefs:

Earle A. Partington
(Law Office of Earle A.
Partington)
for Claimant-Appellant.

Chief Judge

Associate Judge

Noralynne K. Pinao
(Pinao & Ono)
for Employer-Appellee,
Self-Insured and Third-
Party Administrator-Appellee

Associate Judge

12